***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner DeLuca and the briefs and arguments on appeal. Based upon the entire record of evidence, the appealing party has not shown good ground to reconsider the evidence. The Full Commission AFFIRMS the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above.
4. The employee's average weekly wage is $241.61 per week, subject to a Form 22 and wage documentation to be provided by the defendant prior to the hearing.
5. The employee sustained an injury on or about July 9, 2001.
6. The injury arose out of and in the course of employment and is compensable.
7. Prior to hearing, the parties stipulated into evidence all documentation noted in paragraph 12 of the Pre-Trial Agreement, to include medical records, IC Forms, discovery responses, selected correspondence from the parties and Physical Demands Analysis, dated July 23, 2001.
 ***********
Based upon the entire record of evidence, including the additional medical evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff was born on January 18, 1957. Plaintiff graduated from high school and had one year of college. She has worked the bulk of her working years in the banking industry, but also worked as a loss prevention manager, a teller, and a bookkeeper in a credit union.
2. In 1973, when the plaintiff was 16 years old, she was involved in an automobile accident. She sustained an injury to her back that resulted in surgery and spending some time in a body cast. The plaintiff was hospitalized for approximately 30 days and recovered within approximately one year.
3. Since the 1973 accident, the plaintiff has engaged in bowling, white water rafting, tae kwon do, tennis, racquetball, horseback riding and was also on her high school softball team after the accident. Prior to July 9, 2001, plaintiff did not miss appreciable time from work due to back pain.
4. The plaintiff had treated with Dr. Frogley, a chiropractor on a maintenance plan on and off from 1997 through June 2001. The plaintiff's treatment was primarily for neck, shoulder and right arm pain with occasional treatment for low back pain.
5. On July 9, 2001, the plaintiff had been working as a bank teller for BBT for several years. As the plaintiff attempted to sit on a stool with wheels, the stool rolled out from underneath her, causing her to fall to the floor. She landed directly on her tailbone and subsequently her head hit the floor. She had complaints of pain in her neck, back, leg, and wrist but continued to work that day, as they were short-handed.
6. The plaintiff's supervisor, Joanne Ipock, was immediately notified of the injury. The claim was accepted by the defendants as compensable and a Form 60 was filed.
7. On the day following the accident, at the direction of her employer, the plaintiff was seen by Dr. Green, a board certified physician in emergency medicine at the Urgent Care Clinic of East Carolina Internal Medicine. The plaintiff provided a history of the incident as well as the fact that she had a previous injury to her back when she was 16 years old that required back surgery and a body cast.
8. The plaintiff complained to Dr. Green of neck and low back pain. Examination revealed tenderness in the posterior aspect of the neck on the left side and diffused tenderness in the lumbar area. Dr. Green ordered x-rays of the cervical and lumbar areas. Based upon the x-rays, he was concerned about a possible compression fracture of L-5. Dr. Green then ordered a CT scan for further diagnostic purposes. The CT scan indicated there was a moderately severe compression fracture of L5 along with a bulging disk at L4-L5 with encroachment of the dural sac secondary to a compression fracture at L5. On July 15, 2001, Dr. Green then referred her to a neurosurgeon in New Bern, Dr. Dalrymple, and scheduled an appointment for August 1, 2001. The plaintiff was taken out of work.
9. The referral to Dr. Dalrymple was denied by the defendants and instead, the plaintiff was sent to Dr. Kasselt, an orthopedist, in Kinston, North Carolina.
10. The plaintiff's first appointment with Dr. Kasselt was on July 23, 2001. She again provided a history of her recent injury and accident as well as the injury occurring when she was 16 years old. At that time, Dr. Kasselt indicated she could perform light duty work. However, BBT indicated it could not accommodate transitional light duty work. On July 30, 2001, Dr. Kasselt sent the plaintiff to physical therapy. The plaintiff continued to have ongoing complaints of pain. On August 2, 2001, Dr. Kasselt indicated a desire to have her see Dr. Gridley and to undergo psychological testing. On August 6, 2001, Dr. Kasselt and the case manager apparently disagreed on a treatment plan and Dr. Kasselt would no longer treat the plaintiff who was then sent by the defendants to his associate, Dr. Latimer.
11. The plaintiff was out of work due to her injury and pursuant to her doctor's orders from July 10, 2001, through August 7, 2001. The plaintiff returned to work and on August 13, 2001. The plaintiff again presented to Dr. Green. The plaintiff had been at work and in responding to a customer, she moved to get out of her chair quickly and felt a sharp pain in her lower back. She was sent back to Dr. Green by her employer.
12. Dr. Green again took plaintiff out of work and advised her not to attend physical therapy until her symptom exacerbation was controlled. He again reiterated his desire that she see Dr. Dalrymple. The plaintiff was out of work from August 14, 2001, through August 28, 2001. Plaintiff was paid temporary total disability during these periods out of work.
13. The plaintiff was first seen by Dr. Latimer on August 24, 2001. He again resumed plaintiff's physical therapy and placed her on light duty with no lifting of more than 15 pounds. The plaintiff continued to treat with Dr. Latimer with no improvement. Dr. Latimer added additional restrictions to her light duty to include no bending, no stooping, no lifting more than 10 pounds, and continued physical therapy. On October 5, 2001, despite plaintiff's complaints of continued pain, Dr. Latimore returned her to work with no restrictions. The plaintiff was out of work during this period from September 1, 2001 through October 8, 2001. On October 19, 2001, without examining the plaintiff Dr. Latimer indicated plaintiff had no permanent partial disability and that her workers' compensation case was to be closed. At this time, the defendants filed a Form 62 and Form 28.
14. The plaintiff continued to have back pain, numbness and leg weakness but tried to work. The defendants denied any further medical treatment for her admittedly compensable injury.
15. Plaintiff returned to East Carolina Internal Medicine for treatment on November 14, 2001, and was treated by Dr. Lather. Dr. Lather believed the plaintiff could be suffering a lumbar radiculopathy and ordered an EMG. The EMG was positive for nerve compression to the L-5 root. Dr. Lather then referred her to Dr. Dalrymple for neurosurgical consultation.
16. The plaintiff was also seeking relief of her pain from Dr. Frogley. She treated with him from December 10, 2001, through January 23, 2002 without material progress.
17. On February 13, 2002, the plaintiff was first examined by Dr. Dalrymple, who is board certified in neurologic surgery. She provided a history to Dr. Dalrymple. Dr. Dalrymple's exam revealed weakness in the left leg in the anterior tibias and the extensor hallucis longus. These are muscles integrated by the fifth lumbar nerve. Dr. Dalrymple also reviewed the MRI previously performed on her lumbar back. He noted she had a large degree of anteriolisthesis of L-4 on L5 and retrolisthesis of L-5 on S1. Dr. Dalrymple recommended surgery to alleviate her pain.
18. On April 15, 2002, the plaintiff underwent a decompressive lumbar laminectomy of L-4, partial laminectomy of S-1, total fascetectomies of L4-L5, L5-S1 and interbody fusion of L4-L5 and L5-S1 with iliac crest bone graft. The plaintiff worked until the date of surgery and applied for a leave of absence to have the surgery that was approved. The plaintiff was kept out of work until September 23, 2002, when Dr. Dalrymple indicated she could attempt a light duty job with no lifting more than 15 pounds, no repetitive bending, twisting or lifting and frequent position changes during the work day. BBT had no job to accommodate these restrictions.
19. In October 2002, BBT notified the plaintiff in writing in a letter signed by Sandra Blanton that they were unable to accommodate light duty work and would terminate her employment on January 4, 2003.
20. The plaintiff developed a burning dysesthhesias due to scar tissue and Dr. Dalrymple had referred her to Dr. Tellis for pain management at the time of the hearing of this matter.
21. On March 21, 2003, plaintiff was contacted by Annette Goodwin, who identified herself as being with BBT. Ms. Goodwin indicated they had a position for her in Havelock and wanted her to start on Monday. At that time, Ms. Goodwin was unaware of plaintiff's restrictions. Through counsel, plaintiff requested certain information from employer-defendant about the position that was being offered. As of the date of the hearing, plaintiff had received no response to this inquiry. At the hearing, plaintiff indicated that she was willing to try the position. However, Ms. Blanton indicated her understanding that the position was no longer available. Thus, it is found as a fact that plaintiff did not refuse suitable employment in late March or early April, 2003.
22. On June 4, 2003, Dr. Dalrymple approved a written job description from BBT for a senior teller. On June 20, 2003, the plaintiff's pain increased and she was taken out of work completely.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On July 9, 2001, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with the defendant-employer. N.C. Gen. Stat. § 97-2.
2. The greater weight of the competent medical evidence indicates the plaintiff's fall aggravated her pre-existing condition thus bringing on the pain and the leg weakness that resulted in the surgery or was the causative factor in creating the condition that resulted in her surgery and current disability. N.C. Gen. Stat. § 97-2
3. As a result of her compensable injury, the plaintiff has been totally disabled since April 15, 2002. Since April 15, 2002, plaintiff has not refused suitable employment pursuant to N.C. Gen. Stat. § 97-32.
4. The medical treatment the plaintiff has received since October 19, 2001 is for a medical condition causally related to her compensable injury of July 9, 2001. The medical treatment received has been reasonable and necessary to effect a cure, provide relief of her pain and/or lessen her period of disability. N.C. Gen. Stat. § 97-25.
5. As a result of her compensable injury the plaintiff is entitled to temporary total disability in the amount of $161.09 per week from April 15, 2002 and continuing until further order by the Industrial Commission.
6. Plaintiff is entitled to payment of all medical expenses incurred, or to be incurred, as a result of her compensable injury on July 9, 2001, for so long as such examinations, evaluations and treatments shall tend to effect a cure, give relief, or will tend to lessen the plaintiff's period of disability.
7. Neither party is entitled to an award of attorney fees under N.C. Gen. Stat. § 97-88.1. In this regard, it is noted that if the testimony of Dr. Latimer had been accepted as most credible, the outcome in this case would have been substantially different.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall pay for all medical treatment incurred, and to be incurred in the future, that may provide relief of plaintiff's pain, effect a cure, or lessen the period of disability pursuant to N.C. Gen. Stat. § 97-2. Dr. Dalrymple and Dr. Tellis are hereby APPROVED as the plaintiff's treating physicians.
2. The defendants shall pay temporary total disability at a rate of $161.09 per week from April 15, 2002 to the present and continuing until further order by the Commission. Past due benefits shall be paid in one lump sum with weekly checks beginning thereafter.
3. A reasonable attorney fee is approved for plaintiff's counsel in the amount of twenty-five percent (25%) of disability benefits currently due plaintiff and every fourth check of future disability benefits to be paid to plaintiff.
4. The defendants shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER